HOPSON *v.* HELLUMS.

Opinion delivered February 16, 1914.

1.  DRAINAGE DISTRICTS—BONDS—PURCHASE BY CONTRACTOR.—The contractor, employed in the construction of a drainage improvement, may purchase the bonds of the district, when the same were not purchased at the same time as the letting of the contract. (Page 428.)

2.  DRAINAGE DISTRICTS—PURCHASE OF BONDS—COMPLETED SALE.—Where the purchase and sale of the bonds of a drainage district was not completed before the passage of the act of March 8, 1913, it can not be held that the act impairs the obligation of a contract of sale made after its passage. (Page 428.)

Appeal from Jefferson Chancery Court; *John M. Elliott,* Chancellor; reversed.

STATEMENT BY THE COURT.

Appellant, who was the owner of a large amount of land within the limits of Kirsch Lake Drainage District, instituted this suit against the commissioners of the drainage district as such, and against E. J. Hahn and W. B. Carter, partners doing business under the firm name of Hahn & Carter, to whom the commissioners had let a contract to construct and dig the main canal and laterals for the district, and the Bank of Pine Bluff as the depository of the funds of the district. The purpose of the suit, as disclosed by the pleadings, was to annul the contract made by the commissioners with Hahn & Carter, and to cancel certain bonds, which it was alleged had been issued and were held by the Bank of Pine Bluff as trustee for Hahn & Carter, the contractors. The grounds upon which appellant attacked the contract, and upon which he relied for annulling the same, and for the cancellation of the bonds, as alleged in the complaint, and the allegations of the separate answers of each of the defendants are set forth in the opinion on the former appeal, and we need

not restate them here. *Hopson* v. *Hellums,* 108 Ark. 460, 158 S. W. 771.

On the former appeal we held that the contract, according to the allegations of the complaint, as explained by the exhibits, was void, because the commissioners had no authority to let the contract "upon a bid based upon an offer to accept bonds in payment for the work." We remanded the cause and granted permission to the parties to amend their pleadings, "to present such issues as are actually within the existing facts."

After the cause was remanded, the Bank of Pine Bluff filed an amended answer in which it denied that the bonds of the Kirsch Lake Drainage District were delivered to it for the purpose of defeating legislative purposes, and alleged that it held the bonds as the treasurer of the district to be paid for by the purchasers, and denied that it had any right to recall or cancel the bonds.

The appellees, Hahn & Carter, filed an amended answer in which they alleged that, although it might be inferred from the reading of the contract that they bid for the work and for the bonds of the district as one transaction, nevertheless the purchase of the bonds and the awarding of the work were entirely separate and distinct transactions; that the bid for the work was upon a cash basis; that the bids were opened on the 30th day of October, 1912, and that Hahn & Carter were the lowest bidders, and the work was awarded to them upon a cash basis; that on the 4th day of November, 1912, the board met and offered to sell the bonds of the district to defendants Hahn & Carter at 5½ per centum interest and the offer was accepted by them; that the board considered the sale of the bonds of such advantage to it that in writing up the contract for doing the work both contracts were embraced in one instrument, whereas, they were, in fact, separate and distinct transactions and contracts. They alleged that if they were forced to comply with the act of the Legislature of March 8, 1913 (the purpose of which was to prevent the improvement unless sanctioned by a majority in value of the real property in the dis-

trict), that a majority in value of the real property of the district was owned by the St. Louis, Iron Mountain & Southern Railway Company and the Gould Southwestern Railway Company, and that neither of these companies would sign the petition, and the making of the improvement would be defeated.

The board of commissioners, in their amended answer, denied all of the material allegations of the complaint, and pleaded that the act of March 8, 1913, if allowed to affect the issuing of these bonds would impair the obligations of contracts.

The cause was heard upon the issues raised by the amended pleadings and the testimony adduced to support those issues.

The appellant testified, in substance, that he was present when the bids to do the work were opened; there were seven or eight bids; they were read publicly. In the reading of these bids to do the drainage work there was no reference about taking bonds for doing the work. The bids were submitted for so much cash, and none of the bids contained any offer to take bonds. Hahn & Carter were the lowest bidders. Something was said by Mr. Hahn about taking the bonds, but it was after the bids had been read that he made the proposition to take the bonds.

The testimony of the commissioners, in substance, was to the effect that the bids were opened and read publicly. There were nine. Various bidders and land owners were present. The bids were upon a uniform plan of bidding to do the work according to the plans and specifications, and to do the work for cash. Hahn & Carter were the lowest bidders, and the commissioners let the work to them on October 30, 1912, the day the bids were opened. The commissioners did not let the contract for the purchase of the bonds to Hahn & Carter on that day. Hahn agreed to take the bonds after the bids were opened and the commissioners let him have them at par afterward, on the 4th of November, 1912. The board, on that day, closed with Hahn for the bonds at par and 5½ per

centum interest. His first proposition was to take the bonds at par bearing 6 per centum interest. Although the contract was entered into with Hahn & Carter on the 30th of October, 1912, to do the drainage work, it was not written until November 4, following. On that day the commissioners made and executed the contract with Hahn & Carter, and they concluded also to accept Hahn & Carter's proposition to purchase the bonds, so that is the reason the clause was put in binding Hahn & Carter as the contractors to the purchase of the bonds. The contracts for doing the drainage work and the purchase of the bonds were separate and distinct agreements, however.

The board, on the 11th of February, 1913, passed a resolution reciting that the contract to do the drainage work had been let to Hahn & Carter, and that in order to hasten the work of improvement in said district the board could borrow the sum of $135,000 and issue negotiable bonds of said district therefor, consisting of one hundred and thirty-five bonds in denominations of $1,000 each, numbered from 1 to 135, dated February 1, 1913, and specifying the years of maturity. The bonds were to bear interest at the rate of 5½ per centum per annum, payable semi-annually.

The bonds were issued on March 1, 1913, in pursuance of the resolution. They were not delivered to the contractors, but were delivered to the treasurer of the district, the Bank of Pine Bluff, the legal custodian of the funds. The board before this had borrowed from the Bank of Pine Bluff money to carry on the improvement until the bonds were sold. At the time the bonds were issued the contractors had done in the neighborhood of $1,200 worth of work, and had spent a considerable sum in buying and building boats. The contractors were to pay cash for the bonds, and the district paid cash for the work as the work was done, under the estimate of the engineer.

If the contractors, under their contract to purchase these bonds, had failed to pay for the bonds as agreed by

them, the board still had possession of the bonds, and could have sold them to other purchasers. The object the board had in issuing the bonds on March 1, 1913, was to proceed under the law, and to obtain the cash to carry on the work under the contract. The contractors had never stopped work. Hahn & Carter were to pay money for the bonds if they got them. The board sold them to Hahn & Carter for cash.

Appellee Hahn testified in part as follows: ''The purchase of the bonds was entirely separate from the contract for doing the work. The board agreed upon the sale and purchase of the bonds on November 4. I made the board an offer for the bonds, and they decided to sell them to me. Some time after my contract with the board to take the bonds, the board met and authorized the issuing of $135,000 worth of bonds. I knew that the bonds had to be handled as cash. So I went east and negotiated a sale of the bonds with the bond buyers so that I could get the cash on the bonds to proceed with the work. By that time the act of the Legislature of March 8, 1913, had passed, and the bond people wanted that act tested as to whether it involved the bonds which were issued and delivered on March 1, 1913.''

The cashier of the Bank of Pine Bluff testified that ''on March 1, 1913, the commissioners of the Kirsch Lake Drainage District delivered to the bank as depository of said district $135,000 in bonds of the district, duly signed by the commissioners. As custodian of the funds, the bonds were held subject to the payment by the purchaser. These bonds have never been paid for. The bank still has them as custodian of the district. On February 11, 1913, the commissioners borrowed $5,000 and executed a note to the bank. At the time this money was borrowed, I demanded a copy of the resolution authorizing the issue of $135,000 worth of bonds, and it was shown to me, duly signed and under seal. I would not have loaned this money to the Kirsch Lake Drainage District if I had not known that these bonds were authorized to be issued. This loan was based upon the fact that the Kirsch Lake

Drainage District had authorized the issuing of these bonds. This note has not been paid. The bonds were placed with us to be delivered to the purchaser. I never received the money on them. The purchaser of the bonds refused to pay for them on account of the Legislature passing an act after the bonds had been delivered, which they thought might affect the legality of the bonds. The Bank of Pine Bluff forwarded the bonds to the National Bank of Commerce of St. Louis to be delivered to the purchaser. Hahn & Carter were the purchasers of the bonds, and we forwarded them to St. Louis, as it would be convenient for them to make payment there; and I understood that Hahn & Carter had in turn sold them to bond buyers. We did not release the contractor of the bonds. We sent them to St. Louis for the purpose of letting them be delivered to the purchasers to whom Hahn & Carter had sold them. The money was to come back to us, and we were to hold it as custodian of the bonds, and to pay out the money only upon order of the board as the work progressed.''

The court made the following finding: ''I find that the contract between the district and Hahn & Carter, entered into on October 30, 1912, was binding upon the parties, and that the act of March 8, 1913, was void, being an attempt on the part of the Legislature to impair the obligations of a contract.''

A decree was entered dismissing the complaint for want of equity, and this appeal has been duly prosecuted.

*A. H. Rowell,* for appellant.

If there is any doubt as to the manner in which the contract was let, such doubt should be resolved in favor of the taxpayers. Abbott, Public Securities, § 44. We think that the contract on its face expresses the agreement between the commissioners and Hahn & Carter. The latter were awarded the contract for doing the work, and at the same time agreed to take the bonds. The contract is void under the holding of this court on former appeal. 158 S. W. 771.

*Rose, Hemingway, Cantrell & Loughborough,* for appellees.

1. The evidence is clear and convincing that the sale of the bonds and the letting of the contract were separate transactions.

2. The contract does not apply to this bond issue. Plainly the Legislature intended by the act of March 8, 1913, Acts 1913, page 612, that no additional bonds should be issued unless the consent of a majority of owners of property in the district, and a majority in acreage and value should be procured; but it did not intend to prevent the delivery of bonds already issued. Had it so intended, the word "hereafter" would have been omitted, and words used to show that the bonds already issued should be cancelled and not delivered to the purchaser. 57 S. W. 1116; 133 S. W. 827; 1 Wash. 322, 25 Pac. 1019.

3. If the act is given the construction contended for by appellant, it would be unconstitutional and void as impairing the obligations of a contract. 28 Ark. 555; 33 Ark. 691; 40 Ark. 424; 47 Ark. 515; 6 Enc. U. S. Sup. Ct. Rep. 768, 835, 845.

*A. H. Rowell,* for appellant in reply.

1. The weight of authority is that an instrument is not issued until it has been delivered and has become effective. 45 N. E. 804, 16 Ind. App. 565; 54 Mo. 55-59; 26 N. Y. Supp. 98-100, 73 Hun. 590; 102 Fed. 57; 35 Pac. 19; 52 Kan. 521; 22 N. E. 24, 114 N. Y. 518; 114 Fed. 441; 21 S. E. 912, 116 N. C. 466; 16 S. E. 919, 112 N. C. 71; 24 N. E. 433, 132 Ill. 638.

2. Appellee's contention that the act would impair the obligation of the contract is answered by this court's decision in *Caldwell* v. *Donaghey,* 108 Ark. 60, 156 S. W. 840.

WOOD, J., (after stating the facts). The finding of the court "that the contract between the district and Hahn & Carter, entered into on October 30, 1912, was legal and binding upon the parties," is in accord with the undisputed evidence.

The court erred in finding that the act of March 8, 1913, was void as being an attempt on the part of the Legislature to impair the obligation of a contract. That act provides, "that hereafter it shall be unlawful for the commissioners of the Kirsch Lake and Grady Drainage Districts to issue any bonds whatever without first being petitioned by a majority of the land owners and a majority of the owners in acreage and in value, asking that said bonds be issued, and all bonds issued without such petition shall be void as against said district." (Sec. 1.)

At the time this act was passed, the testimony shows that there had been no completed contract for the borrowing of money by the sale of bonds for cash to the party who was proposing to loan the money for the purchase of the bonds. It is true that the members of the board testified that there was a contract between the board and Hahn & Carter to purchase the bonds, and while in their testimony they speak of having "sold the bonds to Hahn & Carter for cash," and while they say that they had "closed with Hahn for the bonds at par and 5½ per cent interest," the real facts, as developed by the testimony of Hahn and the cashier of the Bank of Pine Bluff, were that at the time of the passage of the act of March 8, 1913, no money had been borrowed and no bonds had been sold for cash, but there was pending at that time negotiations for the borrowing of money and the sale and purchase of the bonds, which had not been fully consummated.

Clearly the commissioners had only agreed to sell the bonds to Hahn & Carter provided they could pay cash for the same. But the undisputed evidence shows that Hahn & Carter did not have the cash to pay for the bonds, and they were undertaking to negotiate for their sale to another for cash, and before they had completed such sale, the act was passed. The board, before the act was passed, did not, in fact, sell any bonds to Hahn & Carter, and Hahn & Carter had not, in fact, sold any bonds to bond buyers in Cincinnati, who were expected to furnish the money.

The cashier of the Bank of Pine Bluff, with which the bonds were deposited, stated that they were placed with the bank to be delivered to the purchasers. He had never received any money on them. On the contrary, his testimony shows that the proposed purchaser of the bonds refused to pay for them on account of the Legislature passing an act after the bonds had been placed with the bank "which they thought might affect the legality of the bonds."

The testimony of Hahn shows that he had not in reality purchased the bonds himself, but was only attempting to have some one else purchase them. He says: "So I went east and negotiated a sale of the bonds with the bond buyers so that I could get cash on the bonds to proceed with the work. By that time the act of the Legislature of March 8, 1913, had passed, and the bond people wanted that act tested as to whether it involved the bonds which were issued and delivered on March 1, 1913."

This testimony conclusively shows that Hahn & Carter, at the time of the passage of the act of March 8, 1913, had not entered into a completed contract with the board whereby it had sold to them for cash the bonds of the district. The whole proceeding, as we view the evidence, in regard to the borrowing of the money and the sale and purchase of the bonds, was *in fieri.*

The commissioners, under the former opinion, on rehearing, were not prohibited from borrowing money from, and selling the bonds to, the contractors, but there can be no issuance and sale of bonds in the sense of the statute authorizing the board to issue and sell the same except when there has been a completed contract by which the money has been borrowed on such bonds. Section 15 of the act, under which the board was authorized to proceed, provides that "in order to hasten the work. the board may borrow money, * * * and may issue negotiable bonds therefor."

Under the plain terms of the statute, it does not appear from the evidence in this record that the board of commissioners had borrowed any money or issued and

sold any bonds for money borrowed prior to the passage of the act of March 8, 1913.

Our conclusion on the facts, therefore, makes it unnecessary to enter further upon a discussion of the interesting questions of law so ably presented in the briefs of counsel. It follows that the decree dismissing the complaint for want of equity is erroneous, and the same is reversed and remanded with directions to enter a decree granting so much only of the prayer of appellant's complaint as seeks to cancel the outstanding bonds.