WESTERN LAWRENCE COUNTY ROAD IMPROVEMENT DISTRICT
*v.* FRIEDMAN-D'OENCH BOND COMPANY.

Opinion delivered December 17, 1923.

1. APPEAL AND ERROR—DIRECTION OF VERDICT—REVIEW.—Where the trial court directed a verdict for the plaintiff, the Supreme Court on appeal will give to the testimony in favor of the defendant its highest probative value in considering the correctness of such ruling.

2. HIGHWAYS—HOLDER OF DISTRICT'S WARRANT NOT INNOCENT PURCHASER.—Where a highway district issued a warrant reciting that it was issued "on account of advance on bond purchase of said district," and the holder of the warrant by purchase from the payee knew that the warrant was issued pursuant to the payee's agreement to purchase the bonds of the district in a large sum, which the payee failed to do, such payee was not an innocent purchaser.

3. HIGHWAYS—JURY QUESTION.—In an action against a highway district on a warrant by the transferee of the payee, in which the district counterclaimed for breach of the payee's agreement to purchase the district's bonds, the question whether the payee made the contract on his own behalf or as the transferee's agent *held* for the jury.

4. HIGHWAYS—CONTRACT—RATIFICATION.—A contract for the sale of its bonds made by a highway district before the assessment of benefits was not binding on either party, but such contract could be ratified by the parties, either expressly or impliedly, after the assessments were made.

5. HIGHWAYS—RATIFICATION OF CONTRACT FOR SALE OF BONDS.—A road improvement district, by insisting after assessment of benefits that a contract for the sale of its bonds, made before such assessment, should be performed by the buyer, will be *held* to have ratified such contract.

6. HIGHWAYS—RATIFICATION OF PREMATURE CONTRACT.—To effect ratification by a highway district of a contract prematurely made before assessment of benefits, it is not required that there should be a part performance or a re-execution of the contract, but

there is required a distinct recognition in some form of the existence and binding effect of such contract.

7. CONTRACTS—RATIFICATION—CONSIDERATION.—A ratification of a contract requires no new consideration if the voidable contract which is ratified was based upon a consideration.

8. PRINCIPAL AND AGENT—AUTHORITY OF AGENT TO RATIFY.—An agent who entered into a contract to purchase the bonds of a road district on behalf of a bond dealer before the assessment of benefits was authorized to bind the dealer subsequent to the assessment of benefits by acts constituting ratification of the contract.

9. HIGHWAYS—BREACH OF CONTRACT TO PURCHASE BONDS—DAMAGES. —In an action on the warrant of a road district, in which the district counterclaimed damages for breach of a contract to purchase its bonds, and admitted its liability on the warrant, if the jury should find for the district, they should deduct the amount of the warrant from the amount of the district's damages.

Appeal from Lawrence Circuit Court, Western District; *Dene H. Coleman*, Judge; reversed.

*Poindexter & Irby* and *Ponder & Gibson*, for appellant.

1. The warrant sued on was not negotiable. 3 R. C. L. 849; 19 Wall. (U. S.) 468; 103 U. S. 74; 5 Am. St. Rep. 476; 11 Am. St. Rep. 227; 39 Am. Rep. 63; 104 Am. St. Rep. 225; 87 Am. Dec. 423; 97 Am. St. Rep. 383; 17 Am. St. Rep. 470; 26 Am. St. Rep. 604; 25 Ark. 266; 41 Ark. 245; act No. 293, Acts 1917, §§ 9 and 12.

2. Not being negotiable, the warrant was, in the hands of appellee bond company, subject to all defenses which might have been made against Turner; and, even if it should be considered as negotiable, the bond company, being interested as purchaser along with Turner, would be liable for damages for the breach of their contract of purchase of the bond issue of the district.

3. The court erred in holding that the contract entered into with Turner was void, and in instructing a verdict for the plaintiff. 106 Ark. 39; 119 Ark. 197; 149 Ark. 476; 145 Ark. 279; 115 Ark. 437; 151 Ark. 47.

*Rose, Hemingway, Cantrell & Loughborough*, for appellee.

1.    The instrument sued on is negotiable. Acts 1917, vol. 2, p. 1503, § 12; 152 Ark. 422; 15 N. Y. 337, 69 Am. Dec. 606; C. & M. Digest, § 7896; Brannan's Negotiable Instruments Law, 357, § 130; 8 Corpus Juris, 42, §§ 23-4. Since it is undisputed that the district has received full face value of the warrant, it is immaterial whether it is negotiable or not.    158 Ark. 58.

2.    The contract was void because entered into before the plans for the improvement and the assessment of benefits were made.    108 Ark. 460; 111 Ark. 421; 119 Ark. 188; 149 Ark. 477; 150 Ark. 94; 151 Ark. 47, 55; 153 Ark. 582; 158 Ark. 284.

3.    There can be no recovery because the bonds actually sold were different from those contracted for.    234 U. S. 36; 245 U. S. 337, 344; 197 N. Y. Suppl. 80; 217 S. W. 635.

4.    Appellant cannot make the appellee pay for the consequences of its own folly in building the roads at a time when labor and materials were most expensive, and when bonds were selling at the minimum price.    134 Ark. 345-8; 137 Ark. 397-402; 123 Ark. 1-8; 102 Ark. 246, 251; 118 Ark. 13-16; 146 Ark. 585-592.    The courts will take judicial notice of matters of public history.    150 Ark. 514-516; 144 Ark. 522, 526; 137 Ark. 600, 612.

SMITH, J.    Appellee is a corporation, and will be hereinafter referred to as the company.    It was the plaintiff below, and for its cause of action alleged that the defendant road improvement district, hereinafter referred to as the district, in consideration of $12,500 in money advanced to the district, executed to S. P. Turner the negotiable warrant of the district in the following form:

"Western Lawrence County Road Improvement District.

"Pay to the order of S. P. Turner, Hardy, Ark., the sum of twelve thousand five hundred no/100 dollars ($12,500) with 6 per cent. interest from date until paid.

"On account of advance on bond purchase of said district.

"Dated this 10th day of September, 1919.

(Signed) "Clay Sloan, Chairman,

"D. W. Kaiser, Secretary."

That plaintiff was the owner of said warrant; that same was overdue, and demand for payment had been refused, wherefore judgment was prayed.

The district, for its answer, alleged that it was created by special act No. 293 of the Acts of the General Assembly of 1917, and was given authority to construct certain roads, and in payment thereof to issue negotiable bonds of the district, and that, pursuant to this power, the district, on August 18, 1919, contracted with S. P. Turner, as the agent of the company, for the sale of $450,000, more or less, of the bonds of the district for the price of $439,065, or in that proportion, for the bonds issued to complete the work, payment to be made to meet the requirements of the district in constructing the improvement. That the sale to Turner, as agent of the company, was made pursuant to the terms of a written proposal to purchase, which writing concluded with the following paragraph: "In the event you should sell me these bonds, and your board should need a small fund to meet current and incidental expenses for your preliminary work, I would be glad to let you have, say, any amount up to twenty-five hundred dollars ($2,500) on your warrant, payable six (6) months, with six per cent. (6 per cent.) interest."

That, after the acceptance of this proposal to purchase, the district notified the company that $12,500 would be required for current and incidental expenses and preliminary work, and the company agreed to furnish the money, and did furnish it in the manner hereinafter set out, and received in payment, or as security, therefor, the warrant sued on.

There was an allegation in the cross-complaint filed by the district that the company had defaulted in its

contract for the purchase of the bonds, and that, to meet
its obligations, the district had been compelled to resell
the bonds sold to the company, at a price less than the
contract price, and there was a prayer for judgment for
the loss thus sustained.

At the conclusion of all the testimony the court
directed the jury to return a verdict in favor of the com-
pany, upon the ground that the contract for the sale of
the bonds was made before the assessment of benefits,
and was therefore void, and that consequently the com-
pany was under no legal obligation to buy the bonds, and,
as it was not denied that the district had received the
$12,500, judgment was rendered therefor, and the dis-
trict has appealed.

For the affirmance of the judgment the company
insists that the court properly directed a verdict in its
favor, upon the ground stated, and also for the reason
that the writing sued on is the negotiable promissory
note of the district, which the company acquired, for
value, as an innocent purchaser.

Inasmuch as the verdict was directed in favor of the
company by the court, we must, of course, give the
testimony its highest probative value in favor of the dis-
trict in considering the questions of fact involved.

We consider, first, the question whether the writing
is in fact a negotiable instrument in the sense that the
district may not interpose the defenses set up in its
answer and cross-complaint.

It will be observed that it appears, from the face of
the instrument itself, that it was issued by a govern-
mental agency, and that it is unlike the instrument
involved in the case of *Road Imp. Dist. No. 4* v. *Southern
Trust Co.*, 152 Ark. 422, which was in the form of a
promissory note. The writing here involved is not in
form a promissory note, but is an order on the dis-
trict for a sum of money, which, in the contemplation
of the parties, could not be paid and was not intended
to be paid until funds had been derived from the sale

of the bonds themselves with which to make the payment. It is such an instrument as is ordinarily designated as a warrant. The undisputed testimony is that Mr. Duhme, the company's secretary and its admitted representative, was present when the issuance of this warrant was authorized by the board of commissioners of the district, and knew all the circumstances attending its issuance. Duhme knew, as the warrant itself recites, that it was issued ''on account of advance on bond purchase of said district,'' and was issued pursuant to the paragraph set out above, which is copied from Turner's proposal to purchase the bonds, in which it was agreed to make a preliminary advance, Turner having agreed, in Duhme's presence, to make an advance of $12,500, instead of $2,500, as at first proposed; and Duhme also knew that the warrant covered that advance. In other words, the company had full knowledge of the contract for the purchase of the bonds, and of the consideration for the warrant. This fact will more fully appear in a discussion of another feature of the case, and we conclude therefore that the verdict should not have been directed in favor of the company upon the theory that it was an innocent purchaser for value.

At the time the warrant was issued by the district and acquired by the company, there had been no assessment of the benefits, and the warrant was, on that account, a tentative obligation which might never acquire validity in the hands even of an innocent purchaser, for, as will hereafter be fully shown, the district had no power to make enforceable contracts, except for preliminary expenses, until the betterments to accrue from the proposed improvements had been assessed and the fact ascertained that the betterments would exceed the cost of the improvement.

The controlling questions of fact are these: (1) Did Turner contract for himself, or for the company, for the purchase of the bonds? (2) Was the tentative contract ratified after the assessments had been completed

and the power thus conferred on the district to make a valid enforceable contract?

Mr. Duhme testified, on behalf of the company, that the company was not a party to the contract for the purchase of the bonds, and that he was present, during the negotiations for the purchase of the bonds, in an advisory capacity only to Turner, who was acting solely for himself. Turner corroborates this statement. It appears, however, that Duhme was present during the negotiations, and actively participated in all the discussions relating thereto. The attorney for the district testified that, during these negotiations, Duhme stated what should be done in buying the bonds, so far as the purchasing side of it was concerned, and stated that the company was buying the bonds, but that the company wanted the contract taken in the name of Turner so as to help him get started as its agent in this State. The commissioners substantially corroborated this statement, and they all testified that Duhme was largely deferred to in matters of detail, such as the date of the bonds and the places of deposit of the proceeds, and, after all the terms had been agreed upon and the sale consummated, some one called over the telephone to inquire who had bought the bonds, and one of the commissioners, who answered the call, turned around and asked the name of the purchaser, and Mr. Duhme said, "Friedman-D'Oench Bond Company." The commissioner was not able to pronounce the name, and again asked the name of the purchaser, when Turner spoke up and said, "Why, say S. P. Turner bought the bonds," and Duhme said, "That's all right; let it go at that."

The question of the advance to be made was then discussed, and the district asked for $12,500, but Turner said he did not have that much money, whereupon Duhme said the company would take care of that. It is true that the check which the proposal to bidders required the successful bidder to deposit was deposited by Turner and signed by him, but this check was never cashed; and

was not intended to be cashed. Upon the contrary, the warrant was attached to a draft drawn on Turner, the draft being dated September 10, but the draft was forwarded to St. Louis, the *situs* of the company, and was paid by the company on presentation on September 13, so that Turner, in fact, never advanced any sum on account of the warrant. There are a few other circumstances, of more or less probative value, tending to show that the company was, in fact, the purchaser, but was acting in the name of its disclosed agent. These matters are all denied by Duhme and by Turner, but the truth of the evidence is, of course, for the jury, and we are of the opinion that, if the testimony on behalf of the district is accepted as true, it is legally sufficient to support the finding that Turner was acting as agent for the company, and that the company was the real purchaser of the bonds.

Counsel for the company quote from the case of *Gould* v. *Toland.* 149 Ark. 477, the following statement of the law: "Where there was no assessment of benefits in a road improvement district, and therefore no ascertainment that the cost of the improvement would come within the assessed benefits to the lands in the district, a contract with a bond dealer for the sale of the district's bonds is unenforceable, except as to advances made for preliminary expenses, which, with interest, may be recovered."

We reaffirm what we there said; but it must be remembered that there was never any final assessment of benefits in that case, so that the contract for the sale of the bonds never became an enforceable agreement; while here the betterments were assessed and the fact definitely ascertained that the cost of the improvement would not equal the betterments assessed.

We have frequently, and recently, discussed the power of improvement districts to make contracts prior to the assessment of benefits, and these cases need not be reviewed here. The law on the subject was sum-

marized and restated in the case of *Bowman Engineering Co.* v. *Ark. & Mo. Highway Dist.*, 151 Ark. 47, and it will suffice to quote from that case what we there said: "There was no separate contract with the engineers for the preliminary work, but the contract was one for the performance of all engineering work, both preliminary and permanent. We have decided in several cases that a contract for permanent work is premature and ineffective until it is determined, as a preliminary matter, what the estimated cost of the improvement will be and what the benefits will amount to, so that it can be seen that the cost will not exceed the benefits. *Cherry* v. *Bowman,* 106 Ark. 39; *Thibault* v. *McHaney,* 119 Ark. 188; *Gould* v. *Toland,* 149 Ark. 476. We said, in *Thibault* v. *McHaney, supra,* referring to. *Cherry* v. *Bowman,* that, under authority of that case, a tentative contract might be entered into · for permanent work in advance of the assessment of benefits, yet such contract would not be operative and binding on the district until there has been an assessment of benefits. In *Gould* v. *Toland* we said that the premature contract for permanent construction remained in abeyance and did not become effective until the assessment of benefits had been made for the purpose of ascertaining whether the cost of the improvement would exceed in value the assessment of benefits. None of the cases referred to decide whether or not it is within the power of the commissioners to withdraw from a tentative contract before it becomes effective, and it is unnecessary to do so in the present case, nor do those cases decide just what is necessary to make the contract effective. We think, however, that it follows necessarily from those decisions that there must be a distinct recognition in some form of the existence of the prematurely made contract, after the time comes for it to be made effective; in other words, when it is determined that the total cost of the improvement will not exceed the benefits. In the present case there was an assessment showing benefits in excess of the esti-

mated cost of the improvement, and therefore it was within the power of the commissioners to make the contract. The evidence shows that, after the assessments were completed and approved, the contract was treated as being in effect, and proceedings were taken thereunder looking to the construction of the permanent work. The engineers performed a substantial part of the contract in supervising the work of advertising and receiving bids for the letting of the contract. The case differs in this respect from *Thibault* v. *McHaney* and *Gould* v. *Toland, supra,* in that the facts in those cases were that there was never any assessments of benefits, and the time never came for the contract to become effective. The circumstances in this case bring it directly within the rule in *Morgan Engineering Co.* v. *Cache River Drainage Dist.,* 115 Ark. 437, where the contract for the whole of the engineering work was made in advance, as in the present case, and some of the permanent work was done thereunder. We decided in that case that the contract was valid, and that the obligations thereof could not be impaired by subsequent legislation, so far as concerned the payment of earned compensation for work done under the contract.''

The assessments in the instant case were made both by proceedings in court, pursuant to the provisions of the act creating the district, and by a curative act, which was act No. 54 of the Acts of the Special Session of the General Assembly for the year 1920, approved February 5, 1920.

But the question remains, did the contracting parties ratify the contract after the assessments were made? It was essential that this should thereafter be done, because, prior to that time, the contract for the sale of the bonds was tentative and did not bind either party, and this ratification could be effected only by the concurring acts of the parties, as neither could ratify for the other. This ratification, however, might be implied

as well as express. *Pike* v. *Douglas,* 28 Ark. 59; *Lyon* v. *Tams,* 11 Ark. 189.

There is, of course, no question about a ratification by the district, as it has at all times insisted that the contract should be performed, and now so insists, and it has constantly maintained that the company was entitled to the bonds, and was required by the contract to take them, and the testimony shows that the district used every effort to perfect the details incident to the approval of the bonds by the attorneys selected for that purpose, and to hasten their issuance and delivery.

The contract of sale provided that the bond issue should be approved by the firm of Rose, Hemingway, Cantrell & Loughborough, and the opinion of that firm was made conclusive of the question of the validity of the bond issue, and the testimony shows without dispute that the attorney for the district, acting pursuant to the directions of the board of commissioners of the district, was continually urging action by the examining attorneys, as the district had let a contract for the construction of the improvement and was anxious to obtain the money to meet its obligations arising under the construction contract.

We are of the opinion that the case of *Bowman Engineering Co.* v. *Arkansas & Mo. Highway Dist., supra,* announces the correct rule whereby it may be determined whether there has been a ratification. On that subject we there said: "We think, however, that it follows necessarily from those decisions that there must be a distinct recognition in some form of the existence of the prematurely made contract after the time comes for it to be made effective."

To effect ratification it is not required that there should be a part performance, or a re-execution of the contract, but there is required a distinct recognition in some form of the existence and binding effect of the premature contract, and, if there is such recognition, the contract is ratified. This view accords with the law

of ratification applicable to any contract which requires ratification to acquire binding effect. For instance, in the very recent case of *Hardy* v. *New Rocky Grocery Co.,* 159 Ark. 109, we said: "If appellant, with knowledge that appellees had furnished supplies to the Hensleys on the faith of this note, ratified it by treating it as an existing liability on her part, it is unimportant that she supposed at the time that the note had been transferred to Gathright, instead of the name of appellees being substituted." On page 8 of the same volume of the reports, in the case of *Corning Roller Mills* v. *William Kelly Milling Co.,* we said: "Without reiterating and discussing the evidence, suffice it to say the correspondence between the appellant and the appellee shows that appellant, with full knowledge that the assignment had been made, ratified the same by recognizing the binding effect of the contract, and asking the appellee to cancel the same, or, if it would not cancel the same, to indulge appellant in the matter of extending the time for shipment."

See also, *Whitehead* v. *Wells,* 29 Ark. 99; *Dierks Lbr. Co.* v. *Coffman,* 96 Ark. 505; *Gunter* v. *Williams,* 137 Ark. 530; §§ 1765 and 1805, Page on Contracts.

At § 537 of Page on Contracts (2d ed.), it is said: "One who has entered into a contract which he might avoid because of personal incapacity, such as an infant, an insane person, a drunkard, and the like, has the election to affirm such contract, or to disaffirm it, and, when he has exercised his election, with full knowledge of the facts, such election is final. Accordingly. if such person elects to affirm the transaction, his election is final and conclusive, without any new consideration."

It thus appears that ratification is a form of contract which requires no new consideration, if the voidable contract, made valid by ratification, was itself based upon a consideration.

Now, it must be conceded that the testimony does not show a ratification by the company, unless it is

bound by Turner's actions, and further, that Turner's actions amounted to a ratification. We have said that it was a question of fact for the jury to determine whether Turner was acting for himself, or for the company, in the purchase of the bonds; and if the jury should find that Turner was acting for himself, and not for the company, there would then be no question of ratification in the case. However, if Turner was acting for the company in the matter, then it would be bound by his actions, for, as we said in the case of *Whitehead* v. *Wells, supra,* the principal is affected with notice of all his agent knows in the line of his duty and the scope of his powers, and it was there held, to quote in part from one of the headnotes, " * * * that the jury might well have inferred a ratification of the defendant's acts, if not from the conduct of the plaintiff in recovering the receipt, at least from that of the agent in assenting to the transaction." At § 1805, Page on Contracts, it is said: "The express approval of an unauthorized contract and the adoption of it by agents who have authority to enter into such contracts on behalf of the corporation, amounts to a ratification."

There is testimony to the effect that, after the assessments had been completed, Turner made numerous inquiries covering the time of the delivery of the bonds, and was insistent that the delivery be expedited, as the bond market was going to pieces and the bonds could not be sold to advantage if the delivery was postponed, and he is shown also to have discussed the rate of interest which the bonds should bear. Turner insists that he not only acted for himself alone, but that he did nothing after the assessment was made in recognition of the binding effect of his contract. But this is a question for the jury to pass upon.

The bonds were purchased on the basis of $439,065 for $450,000 worth of bonds, which were to bear interest at the rate of 5½ per cent, but the contract gave the company the right to have the bonds bear 5½ per cent.,

or a less rate, the price of the bonds being automatically adjusted to result in a payment by the district on the basis stated for whatever amount of bonds might be issued.

The district incurred a substantial expense in preparing the bonds for delivery, and in printing them, and, according to the testimony in its behalf, it was not until March 31 that Turner advised the district that the bonds would not be accepted, at which time the price of the bonds had fallen to such an extent that a large loss was sustained when the district was compelled to sell them at the then current market price, and it is this loss which the district seeks to recover in its cross-complaint.

If, upon the issues which we have discussed, the jury should find for the district, then the district would be entitled to recover the difference between the market price of the bonds on the date when the district was first advised that the bonds would not be accepted and the contract price which the company had agreed to pay, together with the expense connected with the preparation and issuance of the second bond issue, made necessary by reason of the company's default, after allowing the company credit for the advance of the $12,500.

In addition to what we have already said, two questions have arisen in our consultation which require some discusssion in view of the opinion of two members of the court. It is their view that these questions should be decided, inasmuch as the case is being remanded for a new trial.

One of these is that, if it be found by the jury that the contract for the purchase of the bonds was not in fact the company's contract, but the contract of Turner, the company would have no right to recover the advance made, because of its default in refusing to accept the bonds. In other words, it is their view that the contract was one for the sale of bonds, and the payment was made as an advance payment, and

the contract is one which would be performed in its
entirety only by the delivery of the bonds by the dis-
trict and the acceptance and payment thereof by the
company.   The $12,500 advance was to be repaid in
bonds, and not in money.   It was, in fact, an advance
payment on the bonds, and the company cannot make
default by refusing to accept the bonds contracted for
and then profit by its own default by asking the return
of the payment made under the contract.

It is the opinion of the majority, however, that the
question does not arise for the consideration of the jury,
for the following reasons: No such issue is raised by
the pleadings, and is not discussed in the excellent briefs
filed by eminent counsel in the case.   It would, in the
opinion of the majority, be a contradiction in terms to
say that the company had made an advance payment
under a contract, yet had made no contract.   The dis-
trict, by filing a counterclaim, has waived the question
that the company defaulted by refusing to accept the
bonds.   There is no question now about the warrant
having been prematurely issued, for the assessments
have been made and completed, and the $12,500 was
used by the district in the construction of the improve-
ment, and that sum, by whatever name it may be called,
has become a valid subsisting obligation of the district,
and should be paid to the legal owner thereof, and no
one questions the company's ownership.   Indeed, as we
understand the case, the district admits its liability to the
plaintiff for the amount of this warrant and the inter-
est thereon, and it seeks only to recoup damages for the
alleged breach of the contract of purchase.

The second question which has arisen in our con-
sultation is the effect of the decision in the case of *Hop-
son* v. *Hellums*, 111 Ark. 421.   It is the view of the CHIEF
JUSTICE and Mr. Justice HART, that the case cited holds
that the directors of an improvement district, operat-
ing under a statute like the one there involved—or like
the one which created the appellant road improve-

ment district—had no authority to make a binding executory contract for the sale of bonds, even though the assessments have been completed and have become final when such contract is made, and that the contract out of which the instant litigation arose is void for that reason.

The majority do not concur in that view, for two reasons. In the first place, we do not interpret the case cited as holding that the district had no authority to make an executory contract for the sale of its bonds. We do not understand that the question of the right of the commissioners to make an executory contract was either considered or involved.

In a prior appeal (*Hopson v. Hellums,* 108 Ark. 460), a contract for the construction of the proposed improvement had been held to be void as against public policy because the commissioners had, apparently, let a single contract for the construction of the improvement and the sale of the district's bonds. We held that there should have been separate contracts for the construction of the improvement and for the sale of the bonds. In other words, that the contract for the construction of the improvement should be let for a sum payable in money, and not in bonds, in order that competition might be encouraged, and that the bidding might not be limited to those contractors only who were able to accept bonds in payment for their work.

Upon the remand it was insisted that there was a separate letting of the contract for the construction of the improvement and for the sale of the bonds, although the same party was the successful bidder for both contracts. We held, on the second appeal, that there was no legal objection to the contractor for the construction of the improvement purchasing the bonds of the district when they were not purchased at the same time as the letting of the construction contract. *Hopson v. Hellums,* 111 Ark. 421.

It appears, however, from the facts stated in the opinion on the second appeal, that the General Assem-

bly, on March 8, 1913, passed an act whereby it was provided that the commissioners of the improvement district were forbidden from issuing any bonds whatever without first being petitioned so to do by a majority in numbers, acreage and value of the landowners in the district, and it was insisted by those who opposed the construction of the improvement that this consent had not been obtained. In opposition to this view, it was contended that the district had already contracted for both the construction of the improvement and for the sale of the bonds, and that the act was invalid as impairing the obligation of those contracts. The court made a finding that, prior to the passage of the act of the General Assembly, valid contracts had been entered into, and that the act was void because it impaired the obligation thereof.

Without repeating here the facts there recited, it may be said that we reversed the finding and decree of the court below, not because of the lack of power on the part of the district to sell the bonds, but because, as a matter of fact, the district had not done so. We said the testimony of Hahn, the alleged purchaser, "shows that he had not in reality purchased the bonds himself, but was only attempting to have some one else purchase them," and that "the whole proceeding in regard to the borrowing of the money and the sale and purchase of the bonds was *in fieri."* In other words, Hahn had contracted to do the work and had agreed to find a buyer for the bonds at a stipulated price to the district, but had failed to do even that before the act of March 8, 1913, was passed.

But, if it should be held that the district has no power to make an executory contract for the sale of bonds, that holding would not affect the contract set out above, because it became a complete and binding contract, if the facts be found as the district contends they are. There has even been a part performance of it by a substantial payment to the district, to be applied in

partial discharge of the obligation assumed, according
to its terms, by the purchaser.

For the error in directing the verdict the judgment
is reversed, and the cause remanded for a new trial.

McCULLOCH, C. J., (dissenting). My conclusion is
that the court erred in directing a verdict against the dis-
trict for the recovery of the sum of money ($12,500)
advanced on the purchase of bonds. If there was a valid
contract for the sale and purchase of the bonds, as con-
tended by the district, and as a majority of the judges
now hold, then the district was entitled to submit its
counterclaim for damages on account of the breach of the
contract by appellee. On the other hand, if there was no
valid contract for the sale of the bonds, as I believe to be
the case, then appellee is not entitled to recover the
amount mentioned, for the reason that it refused to
comply with the agreement to purchase the bonds. And
since the money was advanced, not as a loan, but as a
mere advance on the purchase of bonds, appellee should
not be permitted to demand the return of the money with-
out complying with the agreement upon which the
money was advanced.

It seems clear to me that, whether the contract for
the purchase of the bonds was valid or not, appellee
should not be permitted to repudiate its agreement and,
at the same time, demand a return of the money advanced
conditioned upon that agreement. I have failed to see
any contradiction of terms involved in this feature of
the controversy, as stated by the majority. It is a simple
principle of justice that a party cannot repudiate his
contract and at the same recover upon it, and, even if the
contract was valid for any reason, and the money was
advanced on the contract, the party who refuses to per-
form cannot recover it back. The party should not per-
mitted to repudiate one part of the contract and claim
the benefits under another part.

It is unimportant to determine from the evidence
whether Turner was appellee's agent or not, for it is

undisputed that the money was advanced on the purchase of bonds, and, even if Turner acted for himself in the transaction, appellee knew that the money was not a loan, but was merely an advance on the purchase of bonds. In fact, the written instrument upon which appellee instituted this action shows on its face that it was for money advanced on the purchase of bonds.

I am further of the opinion that the majority reached the wrong conclusion in holding that there was a valid contract for the sale of the bonds, and that there was an issue to be submitted to the jury as to the right of the district to recover damages for the alleged breach of the contract by appellee.

My interpretation of the decision of this court in *Hopson* v. *Hellums,* 111 Ark. 421, is that, under the statute authorizing the commissioners of the district to borrow money and issue bonds, there was no authority to enter into an executory contract for the sale of bonds. The authority thus conferred is limited to the borrowing of money and the issuance of bonds as the evidences of the indebtedness. In the case referred to there had been a contract between a drainage district and Hahn & Carter for the construction of an improvement, which the court held, in the second opinion in the case, to be a valid contract, and there was also a contract for the sale of the bonds. The bonds had been prepared and signed and delivered to a bank in Pine Bluff for delivery. Subsequently the Legislature enacted a statute making it unlawful for the commissioners of the district to issue bonds except upon petition of a majority of the landowners, and it was contended (in fact the trial court so held) that the statute was void because it impaired the obligation of the contract. We held, however, that there was no impairment of the obligation of the contract, for the reason that the contract was not binding on the district until the money was actually loaned and the bonds delivered. We held, in effect, that there was no authority to create an obligation by making an executory

contract to borrow money and sell bonds. In disposing of the matter, we said:

"This testimony conclusively shows that Hahn & Carter, at the time of the passage of the act of March 8, 1913, had not entered into a completed contract with the board whereby it had sold to them for cash the bonds of the district. The whole proceeding, as we view the evidence, in regard to the borrowing of the money and the sale and purchase of the bonds, was *in fieri*. The commissioners, under the former opinion, on rehearing, were not prohibited from borrowing money from, and selling the bonds to, the contractors, but there can be no issuance and sale of bonds in the sense of the statute authorizing the board to issue and sell the same except when there has been a completed contract by which the money has been borrowed on such bonds. Section 15 of the act, under which the board was authorized to proceed, provides that, 'in order to hasten the work, the board may borrow money, * * * and may issue negotiable bonds therefor.' Under the plain terms of the statute, it does not appear from the evidence in this record that the board of commissioners had borrowed any money or issued and sold any bonds for money borrowed prior to the passage of the act of March 8, 1913."

After careful reconsideration of the matter with the other judges, I am unable to escape the conclusion that the plain and necessary effect of that decision was to hold that there was no binding obligation until there was an actual lending of money and issuance and delivery of bonds. I think that is the correct interpretation of the statute, for mere authority to borrow money and issue evidences of the debt does not authorize a preliminary executory contract to borrow money. In other words, there is no contract between the parties until the money is actually borrowed, and that is precisely what was said in the opinion in *Hopson* v. *Hellums, supra*.

My conclusion upon the whole case is that appellee was not entitled to recover for the money advanced, for

the reason that it refused to accept bonds which had been tendered, and that, on the other hand, appellee is not liable for damages for breach of the contract, which was invalid, and that the case should be disposed of here by reversing the judgment and dismissing both the original complaint of the district and the counterclaim of appellee.

Mr. Justice HART concurs in these views.